**J.C. TAYLOR, Jr., Plaintiff,**

v.

**CITIBANK USA, N.A., Successor to Jewelers National Bank, Defendant.**

**No. CIV.A. 03–A–409–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 26, 2003.

James N. Walter, Jr., Christopher W. Weller, Wyndall A. Ivey, Capell Howard PC, Montgomery, AL, Jerry L. Thornton, Law Office of Jerry L. Thornton, Hayneville, AL, George C. Douglas, Jr., Campbell & Douglas, Sylacauga, AL, for J.C. Taylor, Jr., plaintiff.

Rik S. Tozzi, Jason L. Holly, W. Michael Atchison, Starnes & Atchison, Birmingham, AL, Eric J. Mogilnicki, Wilmer, Cutler & Pickering, Washington, DC, for Jewelers National Bank, defendant.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This matter is before the court on competing motions regarding the enforcement of an arbitration provision. Defendant Citibank, USA, National Association, the successor in interest to Jewelers National Bank (collectively, "the Bank") filed a Motion to Stay Proceedings and Compel Arbitration (Doc. 18) on October 10, 2003. Plaintiff J.C. Taylor ("Taylor") filed a Motion For Jury Trial On The Issue of Arbitrability on October 28, 2003 (Doc. 22).

The Plaintiff originally filed a Complaint (Doc. 1) in this case in the Circuit Court for Lowndes County, Alabama on March 17, 2003 claiming that certain terms and conditions for Cross Country's credit card issued to the Plaintiff and others violated a section of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666(c) and regulations issued thereunder. The complaint seeks class action treatment. The Bank removed the case to this court on April 15, 2003 (Doc. 1). The Bank contends that Taylor is required by contract to submit his claims to arbitration and, therefore, has filed a motion to compel arbitration and to stay these proceedings. Taylor opposes the Bank's motion on numerous grounds and requests a jury trial on the issue of whether the parties agreed to arbitrate his claims.

For reasons to be discussed, the Bank's Motion to Stay Proceedings and Compel Arbitration is due to be GRANTED and the Plaintiff's Motion For Jury Trial On The Issue Of Arbitrability is due to be DENIED.

### II. FACTS

In 1980 Taylor opened a credit card account with Jeweler's National Bank. He opened a second account in 1999. Def.'s Mem. Supp. of Mot. to Stay Proceedings and Compel Arbitration (Doc. 19) ("Def.'s Mem."), Decl. of Barbara Elizabeth Riem-

er ("Riemer Decl."), ¶ 5–6. The Agreement governing Taylor's account states that the terms of any part of the Agreement may be changed at any time. *See* Riemer Decl. ¶ 8 and Def.'s Mem. Ex. A, ¶ 8. The Bank sent Taylor monthly billing statements in the months that Taylor had an account balance. Riemer Decl. ¶ 10. Throughout most of 2002, Taylor had a balance of $0.00 on the account and thus did not receive billing statements. *Id.*

In November 2002, Taylor made a purchase and charged it to his credit card. *Id.* Subsequently, the Bank sent Taylor a billing statement in December 2002. *Id.* The December 2002 billing statement included a notice of change in terms to Taylor's credit card agreement. *Id.* at ¶ 11. The billing statement and notice were not returned, and Taylor does not deny receipt. The change in terms gave Taylor an opportunity to reject the new terms. Riemer Decl. ¶ 18, Def.'s Mem. Ex. B at 2. In order to opt out, Taylor would have had to notify the Bank in writing within 30 days of the effective date of the new terms and the account would be closed. The notice then provided that "Use of your account after the Effective Date means that you accept the new terms . . . ." *Id.* Taylor did not give written notification of any rejection of the new terms. Riemer Decl. ¶ 19. He instead made the minimum payment required in his December 2002 statement and continued to carry a balance. *Id.*

The change in terms included an arbitration provision. *Id.* at ¶ 12, Def.'s Mem. Ex. B, pp. 3–4. The original agreement, before the change in terms, apparently did not have such a provision. The arbitration provision of the change in terms, includes a basic agreement to arbitrate.

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

Def.'s Mem. Ex. B p. 4. Additionally, the arbitration clause prohibits the maintenance of any class actions:

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court.

*Id.* Taylor states that he did not know of any arbitration provision in his agreement with the Bank until the Bank moved to compel arbitration. Pl.'s Opp'n to Def.'s Mot. to Stay Proceedings and Compel Arbitration ("Pl.'s Opp'n") (Doc 21), Ex. A, ¶ 5.

### III. *DISCUSSION*

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party to an enforceable arbitration agreement fails to arbitrate a dispute that falls within the scope of the agreement, the aggrieved party may petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. If the court is "satisfied that the making of the agree-

ment for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* However, if "the making of the arbitration agreement" is a disputed issue, the court must first adjudicate whether the agreement is enforceable against the parties. *Bess v. Check Express,* 294 F.3d 1298, 1304 (11th Cir.2002).

In the present case, Taylor contests the enforceability of the Bank's arbitration clause on the grounds that he never agreed to arbitrate his claims. Even assuming that he did assent to the arbitration clause, he argues that the clause is unenforceable as a matter of law for three reasons. First, Taylor contends that the Agreement's unilateral amendment provision renders the entire agreement illusory. Second, he argues that the arbitration clause is unenforceable because it limits the statutory remedies available to him under the Fair Credit Billing Act. Third, he contends that the arbitration clause is unconscionable under Alabama law. The court will discuss each of these arguments separately. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").

### A. *Plaintiff's Assent to Arbitration Agreement*

Although Congress has declared a national policy in favor of arbitration, the policy underlying the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 478,

109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Accordingly, the FAA permits a person seeking to avoid arbitration to request a jury trial on the issue of assent. *See* 9 U.S.C. § 4 (stating that "[i]f the making of the arbitration agreement ... be in issue, the party alleged to be in default may ... demand a jury trial of such issue"). In deciding whether a jury trial is warranted, the Eleventh Circuit has explained that the party seeking to avoid arbitration must "unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 818 (11th Cir.1993) (quoting *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 854 (11th Cir.1992)). More specifically, the challenging party must create a genuine issue of fact by presenting the court "with enough evidence to make the denial colorable." *Chastain,* 957 F.2d at 855.

In this case, Taylor's only basis for challenging his assent to the arbitration clause is the fact that the arbitration clause was on the fourth page of a notice of change of terms mailed to Taylor with his December 2002 bill. *See* Pl.'s Brief In Opp'n (Doc. 24), p. 10. Taylor states that he did not know of the arbitration clause until his lawyers pointed it out to him. *See* Pl.'s Opp'n (Doc. 21), Ex. A, ¶ 5. In other words, Taylor does not deny entering into the original agreement when he opened the account or assenting to its terms, including the change of terms provision; rather, he bases his argument on the fact that the arbitration clause was included in a change of terms notice and not sufficiently highlighted to draw his attention to it. This argument is unpersuasive because "arbitration clauses need not be specially marked or singled out in some

way from the other provisions."[1] *See Rollins Inc. v. Foster*, 991 F.Supp. 1426, 1434 (M.D.Ala.1998); *see also Nobles v. Rural Cmty. Ins. Servs.*, 122 F.Supp.2d 1290, 1300 (M.D.Ala.2000) (stating that "courts cannot single out arbitration clauses for discriminatory treatment"). Indeed, to hold otherwise would violate the Supreme Court's conclusion that the FAA precludes "States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (internal quotations omitted) (holding that the FAA preempts a Montana statute that declared an arbitration clause unenforceable unless the contract contains underlined capital letters on the first page of the contract stating that it contains an arbitration provision).

Since Taylor received the notice of change in terms, which included the arbitration provision, did not reject the changes as allowed, but continued to use the account by maintaining an account balance, he assented to the arbitration provision and is bound by it. *Providian National Bank v. Screws*, —— So.2d ——, No. 1020668, 2003 WL 22272861 (Ala. Oct.3, 2003) and cases cited therein; *Stiles v. Home Cable Concepts, Inc.*, 994 F.Supp. 1410, 1416 (M.D.Ala., 1998). Because the Plaintiff has not presented the court with sufficient evidence to create a question of material fact on the issue of whether he assented to the arbitration provision in the Agreement, the Plaintiff's Motion For A Jury Trial On The Issue of Arbitrability is due to be DENIED.

### B. *Change of Terms Provision*

Having concluded that Taylor agreed to arbitrate his claims, the court must next consider "whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims." *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346. Taylor initially argues that the entire Agreement, including the arbitration clause, is unenforceable because the Agreement's amendment provision permits the Bank to alter the contract's terms unilaterally. As explained below, however, this argument is more appropriately directed to the arbitrator, instead of to this court.

In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court held that arbitration clauses are separable from the contracts in which they are included. *See id.* at 402–04, 87 S.Ct. 1801. According to the "doctrine of separability," the Court explained that "a claim of fraudulent inducement of the contract generally was a matter to be resolved by the arbitrator, whereas a claim that the arbitration clause itself was fraudulently induced would be for the court to decide because such a claim put the making of the arbitration agreement in issue."

---

1. The Plaintiff seemingly ignores the fact that the change of terms notice states the following in bold face type: "ARBITRATION: PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES." *See* Def.'s Mem. (Doc. 19), Ex. B.

*John B. Goodman Ltd. Partnership v. THF Const., Inc.,* 321 F.3d 1094, 1095–96 (11th Cir.2003) (per curiam). In other words, federal courts confronted with motions to compel arbitration are only authorized to address "issues relating to the making and performance of the agreement to arbitrate" itself, not general challenges to the contract as a whole. *Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801; *John B. Goodman,* 321 F.3d at 1096.

■ Given *Prima Paint*'s holding, the central question for this court is whether the Plaintiff's argument regarding the illusory nature of the entire Agreement places "the making of the arbitration agreement in issue." *Bess,* 294 F.3d at 1304. Taylor contends that the "making of the arbitration agreement" is at issue, and the arbitration clause cannot be enforced, because the Agreement as a whole was void *ab initio* due to the inclusion of the amendment provision. This argument, however, was expressly rejected by the Eleventh Circuit in *Bess v. Check Express,* 294 F.3d 1298 (11th Cir.2002).

In *Bess,* the plaintiffs alleged that "check advances" or "deferred payment transactions" by the defendants were actually loans at usurious interest rates in violation of state and federal law. *Id.* at 1300–01. After the defendants moved to compel arbitration, that plaintiffs argued that the arbitration provisions contained in their contracts could not be enforced because the contracts related to illegal financial transactions under Alabama law; thus, the contracts were void *ab initio. See id.*

at 1301–02. The Eleventh Circuit rejected this argument and held that the issue of whether the deferred payment transactions were illegal was for the arbitrator, not the court, to decide. *Id.* at 1306. In reaching this conclusion, the court emphasized that the plaintiffs in *Bess* were challenging the "*content* of the contracts, not their *existence.*" *Id.* at 1305 (emphasis in original). In other words, the plaintiffs were not challenging the contracts on the grounds that they failed to assent to their terms; instead, they argued that the arbitration provisions could not be enforced because other provisions in the contracts rendered the contracts unenforceable as a whole under Alabama law. *Id.* at 1305. Because the plaintiffs' challenge had nothing to do with whether they assented to the contracts or the substantive validity of arbitration provisions, the court concluded that the "making of the arbitration agreement" was not at issue. *See id.* at 1306.

Similar to *Bess,* Taylor raises a substantive challenge to the terms of a contract that is unrelated to the "making of the arbitration agreement." More specifically, he contends that the illusory nature of the amendment provision renders the entire Agreement, as well as the arbitration clause, unenforceable as a matter of law. This argument does not "place the making of the arbitration agreement in issue" because it only relates to the substantive content of the amendment provision, and does not challenge either the Plaintiff's assent to the contract or the substance of the arbitration clause.[2] Therefore, pursuant to *Bess,* the court concludes that it

---

2. The court emphasizes that it can consider the Plaintiff's external legal challenges to the arbitration clause as well as his contention that he did not assent to the arbitration clause because these arguments "place the making of the arbitration agreement in issue." *Bess,* 294 F.3d at 1306 ("Because these contentions

place in issue the enforceability of the arbitration agreement itself, they are to be decided by the court rather than by the arbitrator."); *see Rollins v. Foster,* 991 F.Supp. 1426, 1431 (M.D.Ala.1998) (stating that section 4 of the FAA "permits a federal court to hear only

does not have the authority under 9 U.S.C. § 4 to address the Plaintiff's illusory contract argument. This argument "is one for the arbitration panel, not the district court." *John B. Goodman,* 321 F.3d at 1097.

### C. *Limitation on Federal Statutory Remedies*

Taylor also argues that the arbitration clause's prohibition on class actions renders the entire clause unenforceable as a matter of law because it limits the remedies that are available to him under the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq.*

■ "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346. Nevertheless, the "fact that Congress has enacted a statute which creates substantive rights and provides judicial remedies to vindicate those substantive rights does not mean it has created a non-waivable, substantive 'right' to judicial redress." *Bowen v. First Family Fin. Servs., Inc.,* 233 F.3d 1331, 1336 (11th Cir. 2000). Within the arbitration context, the Supreme Court has explained that a party who has agreed to arbitrate a federal statutory claim "should be held to it unless Congress itself has evidenced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v.Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26

(1991). Accordingly, the question for this court is whether Congress intended to preclude parties from contracting away their ability to seek class action relief under the Fair Credit Billing Act. *See Randolph v. Green Tree Fin. Corp.-Alabama,* 244 F.3d 814, 817 (11th Cir.2001).

■ In this case, Taylor cannot carry his burden of showing that "Congress intended to create a non-waivable right to bring [FCBA] claims in the form of a class action, or that arbitration is 'inherently inconsistent' with the [FCBA] enforcement scheme." *Id.* at 818. In reaching this decision, the court notes that the FCBA, 15 U.S.C. § 1666 to 1666j, is one of several discrete federal statutes included in the larger Truth In Lending Act, 15 U.S.C. § 1601 *et seq. See American Express Co. v. Koerner,* 452 U.S. 233, 235, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981) (stating that the "Fair Credit Billing Act added a number of provisions to the Truth In Lending Act"). Although the FCBA itself does not expressly authorize an injured party to bring a class action, plaintiffs asserting FCBA claims can seek classwide relief pursuant to the TILA's general civil liability provision. *See* 15 U.S.C. § 1640(a)(2)(B) (stating that "any creditor who fails to comply with the requirements imposed under ... Part D ... of this subchapter [,the FCBA,] with respect to any person is liable to such person in an amount equal to the sum of ... in the case of a class action, such amount as the court may allow ..."). Consequently, the court must determine whether Congress has evidenced an intention to preclude a waiver of

---

claims involving forgery, mutual mistake, unconscionability, and impossibility as to the arbitration clause itself"); *see also Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791 (8th Cir. 1998), *cert. denied* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999) (holding that a

court must decide whether an "arbitration clause lacks mutuality of obligation, is unconscionable, and violates public policy" because these issues "go to the making of the arbitration agreement itself").

the class action rights available to plaintiffs seeking relief under 15 U.S.C. § 1640. The court's analysis of this question is guided by *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir.2001), a case in which the Eleventh Circuit expressly held that Congress did not intend for section 1640 to create a nonwaivable right to bring class action claims.

In *Randolph*, the court considered "whether an arbitration agreement that bars pursuit of classwide relief for TILA violations is unenforceable for that reason." *Id.* at 816. After reviewing section 1640's text and legislative history regarding class action remedies, the court determined that "Congress did not intend to preclude parties from contracting away their ability to seek class action relief under the TILA." *Id.* at 818. Accordingly, the court held that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Id.* at 819.

Based on the Eleventh Circuit's reasoning in *Randolph*, this court similarly concludes that the Bank's arbitration clause is enforceable even though it prohibits the Plaintiff from seeking classwide relief for his Fair Credit Billing Act claim. Although *Randolph*'s specific holding only applied to class action bans for "pure TILA claims," the court concludes that "there is no good reason why the [Eleventh Circuit's] analysis . . . of the interplay between arbitration, class actions and TILA in the context of [pure TILA claims] does not apply with equal force to [FCBA claims,]" especially given the fact that both statutes rely on the same remedial statutory provision, 15 U.S.C. § 1640. *Id.* at 818.

The Plaintiff's attempt to distinguish *Randolph* is unpersuasive. Taylor contends that *Randolph* was not decided under the factual showing that the high costs of proceeding individually would prevent a plaintiff from vindicating his rights under a federal statute. Nevertheless, the Eleventh Circuit has explained that the party seeking to avoid arbitration on the basis of high costs must "demonstrate that he faces such 'high costs' if compelled to arbitrate [his] claim . . . that he is effectively precluded from vindicating [his federal statutory] rights in the arbitral forum." *Musnick v. King Motor Co.*, 325 F.3d 1255, 1260 (11th Cir.2003). In this case, the costs that Taylor finds objectionable are his attorneys' fees relative to the potential amount of individual recovery, not the costs associated with litigating his case in the arbitral forum. "The appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id.* at 1259 (quoting *Bradford v. Rockwell Semiconductor Systems Inc.*, 238 F.3d 549, 556 (4th Cir.2001)). Taylor has not presented any evidence to suggest that the costs associated with litigating his case in the arbitral forum are any more prohibitive than the costs of litigating his case in a judicial forum. Moreover, the costs of litigating his case through arbitration may actually be less than in court. If Taylor litigates his FCBA claims in court, he would have to pay an up-front filing fee to initiate his suit. If forced to arbitrate, the possibility exists that he would not have to pay anything at all. This conclusion is supported by the fact that the Bank's arbi-

tration clause states that the Bank "will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you [Taylor] ask us [Bank] and we determine there is good reason for doing so." *See* Def.'s Mem. (Doc. 19), Ex. B. Further, the Bank has filed evidentiary materials which include a declaration of Jason Holly. (Doc. 29, Ex. A) In this declaration, Mr. Holly submits to the court a letter he has sent Plaintiff's counsel in this case offering to advance Taylor any fees required by the arbitration forum to hear the case. Def.'s Evid. Materials (Doc. 29) Ex. A.1. Therefore, Taylor would not have to pay the initial filing fee or any other fees required by the arbitral forum, reducing his cost to litigate this case.

In the end, the Bank's arbitration clause does not limit any of the substantive remedies that would otherwise be available to Taylor under 15 U.S.C. § 1640. The only procedural limitation the Bank imposes is a ban on class actions. However, as explained above, the Eleventh Circuit has held that such a prohibition is "enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Randolph,* 244 F.3d at 819. Therefore, the court concludes that the Bank's arbitration provision does not prohibit the Plaintiff from vindicating his statutory rights under either TILA or FCBA.

### D. *Unconscionability*

Finally, Taylor argues that the arbitration clause is unenforceable because the class action prohibition is unconscionable under Alabama law.

▮ Under Alabama law, an "unconscionable contract or contractual provision is defined as a contract or provision such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Sears Termite & Pest Control, Inc. v. Robinson,* No. 1020304, 2003 WL 21205646, at *5 (Ala. May 23, 2003) (internal citations and quotations omitted). When analyzing whether a contract is unconscionable, the Alabama Supreme Court has explained that courts should focus on two essential elements: "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *American General Finance, Inc. v. Branch,* 793 So.2d 738, 748 (Ala.2000).

▮ In this case, Taylor argues that the arbitration clause's ban on class actions is so patently unfair and unreasonable as to be unconscionable. More specifically, he contends that he "would not be able to pursue this case as an individual claim because he would be unable to pay [his attorneys' fees], and the value of his individual case would not be sufficiently large to be represented under a contingency fee arrangement." *See* Pl.'s Brief In Opp'n. (Doc. 24), p. 18. In support of this position, Taylor has submitted affidavits from several attorneys who state that "the amount and cost of attorney time that would be required to competently handle the matter, whether by arbitration or lawsuit, would far exceed the value of any potential individual recovery whether the case was handled on an hourly or percentage (contingent) basis." *See* Pl.'s Opp'n. (Doc. 21), Ex. A (Decl. of Terry G. Davis), ¶ 7, Ex. D, ¶ 7, and Ex. E, ¶ 7. Due to the economic infeasibility of litigating the Plaintiff's FCBA claim on an individual basis, these attorneys conclude that the only practical method Taylor has to pursue his claims is through a class action on behalf of all credit card holders. *See* Pl.'s

Opp'n. (Doc. 21), Ex. A (Decl. of Terry G. Davis), ¶ 12, Ex. D, ¶ 12, and Ex. E, ¶ 12. If the case proceeds as a class action, the potential value of the claim would be large enough to warrant the anticipated legal time and costs involved in handling the case. *See* Pl.'s Opp'n. (Doc. 21), Ex. A (Decl. of Terry G. Davis), ¶ 11, Ex. D, ¶ 11, and Ex. E, ¶ 11.[3]

This argument is unpersuasive because Taylor ignores the fact that the FCBA's remedial statute, 15 U.S.C. § 1640(a)(3), provides that a creditor shall be liable to the plaintiff "in a successful action" for an amount equal to the "costs of the action, together with a reasonable attorney's fee."[4] *See Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 638–39 (4th Cir. 2002) (relying on existence of section 1640 in rejecting argument that class action prohibition in arbitration clause is unconscionable because plaintiff "will be unable to maintain his legal representation given the small amount of his individual damages"). The thrust of Taylor's contention is that neither he nor any reasonable attorney has any economic incentive to purse this case as an individual action because the litigation costs and attorneys fees would exceed any potential recovery. This argument is based on the erroneous assumption that his costs and attorney's fees will be paid from his damage award. This is simply not the case. If Taylor's claim is successful, the Bank will pay his attorneys' fees and costs; Taylor will not have to forego any of his damages in order to compensate his lawyers. *See Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) ("Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel.").

The Supreme Court has explained that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or his rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)). This concern, however, is not present in an individual suit seeking damages under statutory provisions that provide prevailing plaintiffs with multiple damages, costs and attorneys' fees, because the existence of these remedies provides parties and lawyers with incentives to pursue their cases.[5] *See Andrews v. American Tel. & Tel. Co.,* 95

---

3. For example, one attorney states that the "potential value of the claim must, in my opinion, be in excess of $65,000 before a competent and experienced lawyer would consider undertaking this case on a contingent fee basis." *See* Pl.'s Opp'n (Doc. 21), Ex. D, ¶ 11.

4. The Plaintiff would be entitled to this in arbitration, since the arbitration clause here provides that "[e]ach party must bear the expense of that party's attorneys, experts, witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines." Def.'s Mem. Ex. B p. 4.

5. With regard to damages in individual actions, section 1640 permits a plaintiff to recover "twice the amount of any finance charge in connection with the transaction" up to $1000 and not less than $100. 15 U.S.C. § 1640(a)(2)(A).

F.3d 1014, 1025 (11th Cir.1996) ("[A]l-though the district court stated that class treatment may be the 'only feasible method of adjudication, given the small size of each member's claims,' ... we note that even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs."); *see also Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1365–66 (5th Cir.1979) ("As a practical matter, the award of attorneys' fees is a critical and integral part of [the TILA]. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attorney. Allowance of attorney's fees in a successful action makes legal representation available in a manner analogous to the contingent fee system.").[6] Indeed, the central purpose behind statutory attorneys fees is to encourage lawyers to accept cases in which damages may be small or nominal. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes is to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws."). Although Taylor and his lawyers may be unwilling to litigate this case due to the fact that it may not provide them with enough financial incentive to justify their efforts, this court cannot conclude that either the Plaintiff or his attorneys are so lacking in economic incentive to warrant a finding that the Bank's class action prohibition is unconscionable.[7] *See Johnson v. West Suburban Bank,* 225 F.3d 366, 374 (3d Cir.2000) (holding that an arbitration clause that prohibited class actions would "not necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors" because attorneys fees are recoverable under the TILA and "would

---

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7. Even if this case were certified as a class action with respect to both actual and statutory damages, the court fails to see how Taylor has any more financial incentive to litigate this case. With respect to statutory damages, 15 U.S.C. § 1640(a)(1)(B) provides that the total recovery "shall not be more than the less of $500,000 or 1 per centum of the net worth of the creditor." Because Taylor has requested class certification on a nationwide basis, the Plaintiff's potential $500,000 statutory award would be spread across a tremendously large group of the Bank's cardholders, thus resulting in a de minimis financial recovery for the Plaintiff. *See Johnson v. West Suburban Bank,* 225 F.3d 366, 374 (3d Cir.2000) ("Indeed, individual plaintiff recoveries in a [TILA] class action may be lower than those possible in individual suits because the recovery available under TILA's statutory cap on class recoveries is spread over the entire class."). Although Taylor correctly argues that section 1640 also allows recovery for actual damages, he incorrectly assumes that actual damages will provide a financial windfall to him. Actual damages are designed to compensate persons for individualized harm that they have suffered. *See Turner v. Beneficial Corp.,* 242 F.3d 1023, 1026 (11th Cir. 2001) (en banc) ("[A]ctual damages ensure that consumers who have suffered actual harm ... can be fully compensated."). Therefore, regardless of whether Taylor brings this case as a class action or an individual action, his actual damages will be the same.

therefore appear to be recoverable in arbitration").

Notwithstanding Taylor's argument to the contrary, this conclusion does not conflict with *Leonard v. Terminix International Co.*, 854 So.2d 529 (Ala.2002). In *Leonard*, the Alabama Supreme Court addressed whether an arbitration clause that precluded class actions was unconscionable under Alabama law where the monetary value of the plaintiff's claim was so small that a class action presented the only way for the plaintiff to obtain relief. *Id.* at 535. The plaintiffs brought a tort action worth "less than $500" yet faced the following costs pursuant to the arbitration agreement: "(1) a $500 arbitration filing fee; (2) a minimum $150 administrative fee per party; (3) an administrative fee of $150–$250 per day per party for each hearing date; (4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the cost of the charge for a meeting room; and (6) the cost of an attorney." *Id.*[8] Based on this disparity, the court held that the arbitration agreement was unconscionable because it restricted the plaintiffs "to a forum where the expense of pursuing their claim far exceeds the amount in controversy." *Id.* at 539.

*Leonard* is distinguishable from the present case for several reasons. First, the Bank's arbitration agreement permits Taylor to request that the Bank advance any filing, administrative and hearing fees. Further, the Bank has offered to advance Taylor any fees required by the arbitration forum to hear the case. Def.'s Evid. Materials (Doc. 19) Ex. A.1. Therefore, unlike *Leonard*, the Plaintiff here will not have to pay any money out of his own pocket to initiate the arbitration proceeding. Second, Taylor has brought suit under a federal statute that awards costs and attorneys fees should he assert a successful claim. Unlike the plaintiffs in *Leonard*, Taylor need not worry about having his damages reduced by the amount of his costs or attorneys fees. Third, *Leonard* was based in part on the fact that the arbitration clause barred the plaintiff from recovering "indirect, special, or consequential damages." *Id.* at *5. Here, the Bank's arbitration clause does not limit any of the substantive remedies available to the Plaintiff under 15 U.S.C. § 1640. As a result of these significant factual differences, the court concludes that *Leonard*'s holding is not applicable to this case.

In sum, the court finds that the Bank's arbitration clause's prohibition on class actions is not unconscionable under Alabama law. Because the arbitration clause does not limit the Plaintiff's right to recover costs and attorneys fees under 15 U.S.C. § 1640, the court rejects the argument that he has no economic incentive to pursue his claim on an individual basis.

This court reached the same conclusion in a recent case involving another statute included in the Truth In Lending Act, the Equal Credit Opportunity Act, 15 U.S.C. § 1691. *See Pitchford v. AmSouth Bank*, 2003 WL 22282900, No. 03–A–665–E (M.D.Ala. Sept. 29, 2003).

## IV. *CONCLUSION*

For the reasons stated above, the court reaches the following conclusions: 1) Tay-

---

**8.** Although the arbitration clause at issue in *Leonard* was "silent as to who must pay the arbitration costs[,]" the court based its holding on the assumption that the plaintiffs would be required to pay the full amount. *See Leonard*, 854 So.2d at 541 (See, J., dissenting) ("[T]he majority accepts on its face the Leonards' assertion that the arbitration clause in this case requires them to pay prohibitively high arbitration costs....").

lor agreed to arbitrate his claims with the Bank, and 2) the arbitration agreement is enforceable as a matter law. Accordingly, the Plaintiff's Motion For Jury Trial On The Issue of Arbitrability (Doc. 15) is due to be DENIED, and the Bank's Motion to Stay Proceedings and Compel Arbitration is due to be GRANTED.

A separate Order will be entered in accordance with this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED as follows:

1) Defendant's Motion To Stay Proceedings and Compel Arbitration is GRANTED.

2) Plaintiff's Motion For Jury Trial On The Issue of Arbitrability is DENIED.

3) Plaintiff is ORDERED to submit her individual claims against Cross Country to binding arbitration in accordance with the arbitration clause in the credit card Agreement.

4) Because there are no additional defendants in this case, this case is STAYED pending arbitration pursuant to 9 U.S.C. § 3.

5) The clerk of the court is DIRECTED to close this action for statistical purposes, but the parties may request reinstatement at any time that they require the court's intervention.

6) The parties are DIRECTED to file a notice with the court when arbitration has been concluded.