**HOME QUALITY MANAGEMENT, INC., a Tennessee corporation, Plaintiff,**

**v.**

**ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, Defendant.**

No. 05–80249–CIV– RYSKAMP/VITUNAC.

United States District Court, S.D. Florida, West Palm Beach.

July 1, 2005.

Valerie Shea, Moises Melendez, Gordon Hargrove & James, P.A., Ft. Lauderdale, FL, for Ace American Insurance Company.

Mitchell Krouse, Mary Morris, Morris & Morris, P.A., West Palm Beach, FL, for Home Quality Management, Inc.

### ORDER GRANTING DEFENDANT ACE'S MOTION TO STAY AND TO COMPEL ARBITRATION IN PHILADELPHIA, OR TO DISMISS OR TRANSFER

RYSKAMP, District Judge.

THIS CAUSE comes before the Court upon Ace's Motion to Stay and to Compel Arbitration in Philadelphia, or to Dismiss or Transfer ("Mot. to Stay") [DE 8] filed on May 6, 2005. Plaintiff filed a Response in Opposition to Defendant's Motion to Stay and to Compel Arbitration in Philadelphia, or to Dismiss or Transfer ("Resp.") [DE 10] on May 16, 2005, and Defendant filed a Reply Memorandum [DE 13] on June 2, 2005. The motion is now ripe for adjudication.

### I. Background

This is a diversity action brought under 28 U.S.C. § 1332. Plaintiff, Home Quality

Management, Inc., is a Tennessee corporation located in Palm Beach Gardens. Florida, and Defendant, Ace American Insurance Company, is a Pennsylvania corporation. *See* Compl. [DE 1], at ¶¶ 1, 3. In June, 2003, Plaintiff purchased two insurance policies that provided workers' compensation and employer's liability insurance coverage for the period of June, 2003 through October, 2004. *Id.* at ¶¶ 4, 5. In connection with such coverage, Plaintiff also executed a Deductible Workers Compensation Agreement ("Program Agreement") and certain addenda. *Id.* at ¶ 6. Plaintiff alleges that the Program Agreement modified the terms of the coverage provided in the policies, and in particular, changed the rates charged to Plaintiff. *Id.* at ¶ 7. Plaintiff further alleges that Defendant was required, but failed, to obtain approval of the Program Agreement from the Florida Department of Financial Services, Office of Insurance Regulation ("OIR"). *Id.* As a result of the allegedly unlawful rates, Plaintiff claims that it was overcharged premiums in the amount of $1,152,593.00. *Id.* at ¶ 11. Plaintiff also claims that Defendant unreasonably failed to return an evergreen letter of credit from Wachovia Bank, that was provided to Defendant pursuant to Article IV of the Program Agreement. *Id.* at ¶ 22; Mot. to Stay [DE 8], at Exh. 2 (Program Agreement, Art. IV).

On March 24, 2005, Plaintiff filed this action against Defendant in this court. The Complaint [DE 1] sets forth two claims alleging a violation of Fla. Stat. § 626.9541(*o*)(2) (Count I) and breach of contract (Count II). On May 6, 2005. Defendant filed the instant Motion to Stay [DE], as well as a Demand in Arbitration

with the American Arbitration Association. The issue before the Court is whether it may consider the merits of the action or whether it must send the action to arbitration.

## II. Discussion

 A court called upon to determine whether arbitration is appropriate under Florida or federal law must determine (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *E.g., Seifert v. U.S. Home Corp.,* 750 So.2d 633, 636 (Fla. 1999). The existence of an arbitration agreement does not automatically require this Court to refrain from adjudication of the merits of the dispute, as "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Tech. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Because arbitration provisions are essentially contracts, construction of arbitration clauses and the contracts containing them are matters of contract interpretation. *Seifert,* 750 So.2d at 636 (citing *Seaboard Coast Line R.R. v. Trailer Train Co.,* 690 F.2d 1343, 1352 (11th Cir.1982)). While federal policy strongly favors enforcement of arbitration clauses, *Seaboard,* 690 F.2d at 1352 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)), courts interpreting arbitration clauses cannot stretch them beyond the scope originally contemplated by the parties. *United Steelworkers,* 363 U.S. at 583, 80 S.Ct. 1347 (citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 242, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)). The Federal Arbitration Act ("FAA")[1] "simply

1. The Court rejects Plaintiff's argument that the McCarran–Ferguson Act, 15 U.S.C. § 1012(b), which prohibits Congress from

passing any law to invalidate, impair, or supersede state laws regulating the insurance business, preempts the FAA. To the contrary,

requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

### A. Whether a Valid Written Agreement to Arbitrate Exists

The Program Agreement contains a mandatory arbitration provision, which states in relevant part:

> Any controversy, dispute, claim or question arising out of or relating to this Agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof (hereinafter, collectively "Controversy") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, PA.... Except, as otherwise specifically provided in this Article, the arbitration of any Controversy shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

Mot. to Stay [DE 8], at Exh. 2 (Program Agreement, Art. VI, § 5).

██ Plaintiff contends that the entire Program agreement is void such that there is no valid written agreement to arbitrate. In support of this argument, Plaintiff offers a February 4, 2005 letter from Teresa Eaton, of the OIR, to Defendant. Resp. [DE 10], at Comp. Exh. "A". In that letter, Ms. Eaton opines that certain provisions of the Program Agreement and the 2003 Addendum thereto appear to violate various sections of the Florida Unfair Insurance Trade Practices Act, Insurance Rating Law, and Workers' Compensation Law, and the regulations thereunder, including Fla. Stat. §§ 626.9541(1)(h), 627.062(1),

627.091, 627.191, 627.211, 627.410, 440.38, and 440.41.

██ Applying the foregoing principles to this case, the Court finds that Plaintiff must be compelled to arbitration. Federal courts confronted with motions to compel arbitration are only authorized to address "issues relating to the making and performance of the agreement to arbitrate" itself, not general challenges to the contract containing an arbitration clause as a whole. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 881 (11th Cir.2005).* Arbitration clauses are separable from the contracts in which they are included; accordingly, a claim that the contract is void in its entirety should be resolved by the arbitrator, whereas a claim that the arbitration clause itself was fraudulently induced or otherwise unenforceable is for the court to decide. *See Prima Paint*, 388 U.S. at 402–04, 87 S.Ct. 1801. *See also John B. Goodman Ltd. Partnership v. THF Const., Inc.*, 321 F.3d 1094, 1095–96 (11th Cir.2003) (*per curiam*).

In this case, Plaintiff challenges the content of the Program Agreement, not its existence. In other words, Plaintiff does not claim that it failed to assent to its terms; instead, it argues that the arbitration clause cannot be enforced because other provisions in the Program Agreement renders the entire contract unenforceable as a whole under Florida law. Because Plaintiff's challenge has nothing to do with whether it assented to the contract or the substantive validity of the arbitration provision contained therein, the making of the arbitration agreement is not at issue. *See Taylor v. Citibank USA, N.A.*, 292 F.Supp.2d 1333, 1339 (M.D.Ala.

the Court finds the McCarran–Ferguson Act to be inapplicable to this case.

2003). Plaintiff's argument that the Program Agreement is void is for the arbitration panel, not for this Court.

### B. Whether Arbitrable Issues Exist

■■■■ In general, the arbitrability of a dispute is to be determined by the court. *See Seifert,* 750 So.2d at 636. Any doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). A motion to arbitrate should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue." *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979).

■■■■ Section 5 of the Program Agreement explicitly requires arbitration of any controversy, dispute, claim or question arising out of or relating to the Agreement. Mot. to Stay [DE 8], at Exh. 2 (Program Agreement, Art. VI, § 5). This language is clear and unambiguous that the parties intended for all disputes regarding the premiums charged, as well as collateral security held, by Defendant pursuant to the Program Agreement to be submitted to arbitration. Accordingly, the Court finds that the parties' dispute is arbitrable.

### C. Waiver of Right to Arbitration

■■■■ Finally, this Court must decide whether Defendant's conduct throughout the course of this action constitutes a waiver of the right to arbitration. "A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *Stone v. E.F. Hutton & Co., Inc.,* 898 F.2d 1542, 1543 (11th Cir.1990) (quoting *Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494,

497 (5th Cir.1986)). All doubts concerning whether a waiver of the right to arbitrate has occurred should be resolved in favor of arbitration. *See Raymond James Fin. Servs. v. Saldukas,* 851 So.2d 853, 856 (Fla. 2d DCA 2003); *Benedict v. Pensacola Motor Sales, Inc.,* 846 So.2d 1238, 1240 (Fla. 1st DCA 2003). "Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir.1982).

■■■■ There is no evidence in the record to show Defendant exhibited any conduct that constitutes waiver of its right to an arbitral forum. Defendant promptly filed its motion to compel arbitration, shortly after the filing of the Complaint. Defendant has not participated in the litigation process, such as engaging in pre-trial discovery, to support waiver. The Court therefore finds that Defendant's conduct is not such that it has waived its right to arbitration.

### D. Stay of Action

The Program Agreement provides that the majority decision of the arbitration panel shall be final and binding upon the parties, and that "[j]udgment may be entered upon the award of the arbitrators in any court of competent jurisdiction." Mot. to Stay [DE 8], at Exh. 2 (Program Agreement, Art. VI, § 5). Accordingly, this action is stayed until conclusion of the arbitration.

### III. Conclusion

THE COURT has considered the motion and pertinent portions of the record, and is otherwise fully advised in the premises, so it is hereby

ORDERED AND ADJUDGED that:

(1) Defendant's Motion to Compel Arbitration and to Dismiss or Stay Action [DE 2] is GRANTED;

(2) The parties shall submit their dispute to arbitration in accordance to the terms of their agreement;

(3) The above-referenced case is hereby STAYED pending arbitration;

(4) All motions presently pending in the above-referenced case are DENIED as MOOT, with the proviso that should the stay of this case be lifted, the parties are granted leave to re-file any presently pending motion; and

(5) Upon completion of arbitration, the parties shall notify this Court of any intention to further pursue the above-referenced case.