Opinion issued June 24, 2010.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00495-CV

———————————

Tiffany J. Koontz, Appellant

V.

Citibank
(South Dakota), N.A., Appellee



 



 

On Appeal from the County Court at Law No. 1 

Fort Bend County, Texas



Trial Court Case No. 05-CCV-026137

 



MEMORANDUM OPINION

          This is an appeal from a final
judgment confirming an arbitration award in favor of appellee, Citibank (South
Dakota), N.A. [“Citibank”] on a credit card debt.  On appeal, appellant, Tiffany J. Koontz,
contends that (1) there was no evidence of an agreement to arbitrate, (2) any
arbitration agreement is ambiguous as to what law applied, and (3) the
arbitrator failed to comply with the terms of the arbitration agreement.  We affirm.

BACKGROUND

          In March 2005, Citibank sued
Koontz for an unpaid credit card debt. 
Koontz answered and filed a counterclaim.  On October 4, 2005, Citibank filed an amended
motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C.S.
§§ 1-16 (LexisNexis 2008) (“FAA”).  Attached to the motion were the arbitration
agreement and the affidavit of Susan Wills, a Citibank employee.  On November 15, 2005, the trial court granted
Citibank’s motion to compel arbitration.

            Koontz filed an appeal to this
Court, which we dismissed for want of jurisdiction because no interlocutory
appeal lies from the granting of a motion to compel arbitration.  See
Koontz v. Citibank, No. 01-05-01140-CV, 2007 WL 1299674, at *1 (Tex.
App.—Houston [1st Dist.] May 3, 2007, no pet.) (memo op.).

            The case proceeded to arbitration,
and on February 25, 2008, the arbitrator entered an award in favor of
Citibank.  On March 11, 2008, the trial court
signed a final judgment confirming the arbitrator’s award.  This appeal followed.

IS THERE PROOF OF AGREEMENT TO ARBITRATE?

          In issue one, Koontz
contends the that there is no proof of an agreement to arbitrate because (1)
under Texas law the agreement is invalid because it was never signed by Koontz,
(2) the affidavit by Susan Wills in support of Citibank’s motion to compel
arbitration is not competent proof of an agreement to arbitrate, and (3) there
is no evidence that Koontz ever applied for a credit card.  Before respectively addressing each issue, we
determine whether the case is governed by the Federal Arbitration Act or Texas
law.

Does the FAA Apply?

          First, Koontz argues that,
because “the purported agreement does not specify which law controls, the
presumption is that Texas law applies.”  However, the record shows that the arbitration
agreement contains the language, “This arbitration provision is governed by the
Federal Artibration Act [the ‘FAA’].”  

The FAA may govern a written arbitration clause enforced in
Texas state court if the parties have expressly contracted for the FAA’s
application. In re AdvancePCS Health, L.P., 172 S.W.3d 603, 605-06, 606 n.3
(Tex. 2005). When parties have designated the FAA to govern their arbitration
agreement, their designation should be upheld. See id. at 606 & n.3. 
“Courts honor the parties’ agreement to be bound by the FAA, upholding
choice-of-law provisions providing for application of the FAA.”  In re
Jim Walter Homes, Inc., 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.]
2006, orig. proceeding); see In re Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex. App.—Houston
[1st Dist.] 2002, orig. proceeding) (applying FAA when agreement expressly
invoked it); In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex. App.—San
Antonio 2000, orig. proceeding) (same).  

          Koontz also argues that the FAA does
not apply because there is no evidence that the case involves interstate
commerce.  Again, we disagree.  The extension of credit by an out-of-state
institution to a Texas resident demonstrates a loan made in interstate
commerce.  See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 754 (Tex. 2001).

          Because the agreement specifies that
the FAA will apply and the extension of credit by a foreign bank to a Texas
resident involves interstate commerce, we conclude that the FAA is applicable
to the agreement.

Does
the FAA require the Arbitration Agreement to be Signed?

Koontz argues that, under Texas law,
Tex. Fin.
Code Ann. §§ 301.002(a)(2), 342.455(c)
(Vernon 2006), a credit card agreement is invalid unless it is in writing,
signed by both the lender and the borrower. 
Thus, Koontz argues that, because the credit card agreement is invalid,
the arbitration clause found therein is invalid.

We reject this argument because we have already held that the arbitration
agreement in this case is governed by the FAA. 
The record shows that Koontz had a credit card account with
Citibank.  On October 2003, Citibank send
Koontz a Notice of Change in Terms amending the existing agreement with
Citibank to include a “provision regarding binding arbitration.”  The agreement to arbitrate sent to Koontz
with the Change in Terms included an “opt out” provision, which, if exercised,
would have permitted Koontz to decline the arbitration agreement, while still
using her account until the later of her current membership year or the
expiration of her card.  Koontz did not
elect to opt out of the arbitration agreement. 
Instead, she continued to make purchases and payments after the date
that  the arbitration agreement became
effective.

Numerous courts have, pursuant to the FAA, enforced almost identical
Citibank arbitration provisions that were added to existing credit card
agreements by amendment.  See Taylor v. Citibank USA, N.A., 292 F.
Supp. 2d 1333 (M.D. Ala. 2003); see also
Eaves-Leonos v. Assurant, Inc., No. 3:07CV00018, 2008 WL 80173 (W.D. Ky.
Jan. 8, 2008); Dumanis v. Citibank (South
Dakota), N.A., No. 6:07CV06070, 2007 WL 3253975 (W.D.N.Y. Nov. 2, 2007); Lowman v. Citibank (South Dakota), N.A.,
No. 2:05CV08097, 2006 WL 6108680 (C.D. Cal. Mar. 24, 2006); Koenick v. Citibank (South Dakota), N.A.,
No. AW-05-1006, 2005 WL 1363982 (D. Md. June 7, 2005); Egerton v. Citibank, N.A., No. 2:03CV06907, 2004 WL 1057739, *2
(C.D. Cal. Feb. 18, 2004); Citibank
(South Dakota), N.A. v. Walker, No. A117770, 2008 WL 4175125 (Cal. Ct. App.
Sept. 11, 2008).

Does the Affidavit Support Citibank’s
Motion to Compel Arbitration?

          Nevertheless, Koontz argues
that Citibank’s evidence in support of its motion to compel arbitration is
incompetent.  Specifically, Koontz argues
that the affidavit by Susan Wills, which was used to authenticate Citibank’s
business records, is of no evidentiary value because Wills averred that “the
statements set forth in this affidavit are true and correct to the best of my
knowledge, information, and belief . . . .” 


          Citibank
argues that Koontz’s objection is that the Wills affidavit is not based on
personal knowledge and that, by failing to object at trial, Koontz waived this
objection.  We also perceive Koontz’s
complaint to be that the Wills affidavit fails to satisfy the business records
exception to the hearsay rule and that, therefore, the business records
attached to her affidavit are of no evidentiary value. 

An objection that an affidavit fails to comply with the
business records exception to the hearsay rule, as well as an objection that
the affiant does not have personal knowledge, are objections to the form of the
affidavit and must be preserved in the trial court.  Dulong v. Citibank (South Dakota), N.A., 261 S.W.3d 890, 893 (Tex. App.—Dallas
2008, no pet.); Seidner v. Citibank (South Dakota), N.A., 201 S.W.3d 332, 334-35 (Tex. App.—Houston [14th Dist.] 2006,
pet. denied); Choctaw Props., L.L.C. v. Aledo I.S.D., 127 S.W.3d 235,
241 (Tex. App.—Waco 2003, no pet.). Because Koontz did not object to Wills’s
affidavit before the trial court, she has failed to preserve for review her
objections to the affidavit. See Tex.
R. App.  P. 33.1(a)(2).

 Is there
Evidence that Koontz Applied for Credit Card?

          Finally, Koontz contends
that there is no evidence that she ever applied for a credit card.  We disagree. 
Even though there is no copy of a credit card application in the
documentary evidence, there is undisputed evidence that Citibank routinely
extended Koontz credit, that Koontz made purchases with that credit, and that Koontz
made payments toward her indebtedness. 
From this, the trial court could reasonably have concluded that Koontz
had, at some time in the past, applied for a credit card with Citibank.

          However, the terms of the initial
agreement with Citibank are irrelevant.  Again,
it is undisputed that after receiving the Notice of Change in Terms and the accompanying
arbitration agreement, Koontz continued to use the card and did not “opt out”
of the arbitration agreement.  Koontz’s
continued use of the card after receiving the arbitration agreement established
her assent to its terms. See e.g.,
Boomer v. AT&T Corp., 309 F.3d 404, 415
(7th Cir. 2002) (customer accepted terms of contract by failing to follow
non-acceptance instructions in contract and continuing to use services); Herrington v. Union Planters Bank, NA., 113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) (“[Tlhe
plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts.”); Marsh v. First USA Bank, N.A.,
103 F. Supp. 2d 909, 919 (N.D.
Tex. 2000) (“Plaintiffs continued to use their First USA credit cards after
receipt of the amendments. Therefore, Plaintiffs . . . are contractually bound
by the arbitration provision of their Cardmember Agreements.”); Stiles v. Home Cable Concepts, Inc., 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing
arbitration provision contained in amendment to credit card agreement because  plaintiff maintained account after effective
date of arbitration clause);
Grasso v. First USA Bank, 713
A.2d 304, 309 (Del. Super. Ct. 1998) (holding that plaintiff “unequivocally manifested acceptance” of cardholder agreement by making purchases and payments on account). 

          We
overrule issue one.

IS AGREEMENT TO ARBITRATE AMBIGUOUS?

          In issue two, Koontz
contends that the arbitration agreement is ambiguous as to what law
applies.  We disagree.  As stated above, the agreement specifically
provides that the FAA will govern, and we previously concluded that the
contract involves interstate commerce. 
Nevertheless, Koontz complains that the arbitration award and the
judgment based thereon are silent as to what law applies.  However, Koontz cites no authority requiring
such a recitation to be in the award or the judgment.

          We
overrule issue two.

DID ARBITRATOR FAIL TO COMPLY WITH AGREEMENT?

          In
point of error three, Koontz contends that the arbitrator failed to comply with
the terms of the arbitration agreement because the arbitrator did not provide a
brief statement of the reasons for the award. 
Essentially, Koontz argues that by failing to provide a statement of the
reasons for the award, the arbitrator exceeded his powers, which is one of the
grounds for setting aside arbitration agreements under the FAA.  See
9 U.S.C.S. § 10(a)(4) (LexisNexis
2008).

However, the record
shows that Koontz failed to timely request a statement of reasons. The American
Arbitration Association [“AAA”] is one of three firms identified by the
agreement to arbitrate from which either party could select. Citibank selected the
AAA. Per the terms of the agreement to arbitrate, selection of the AAA had the
effect of incorporating the AAA’s procedures and rules:

The arbitration will follow procedures
and rules of the arbitration firm . . . unless those procedures and rules are
inconsistent with this Agreement, in which case this Agreement will prevail.

 

As Koontz
correctly states, the agreement to arbitrate permits either party to

request
a statement of the arbitrator’s reasons:

The arbitrator will make any award in
writing and, if requested by you or us, will provide a brief statement of the
reasons for the award.

 

The
record is silent whether the arbitrator gave any oral statement of his reasons
for the award. There is no written statement of such reasons.

However, to be entitled to such a written statement of
reasons, Koontz

 was required to comply with Rule 42 of the AAA
procedures, which provides:

R-42. Form of Award

(a) Any award shall be in writing and
signed by a majority of the arbitrators. It shall be executed in the manner
required by law.

(b) The arbitrator need not render a
reasoned award unless the parties request such an award in writing prior to
appointment of the arbitrator or unless the arbitrator determines that a
reasoned award is appropriate.

 

Consistent
with the language in the agreement to arbitrate, Rule 42 permits a party to
request a reasoned award. Rule 42, however, details (1) how such a
request is to be made, in writing, which Koontz did, and (2) when such a
request must be made, prior to appointment of the arbitrator, which Koontz
did not do. 

The arbitrator
heard the matter beginning on February 12, 2008.  Koontz’s
request for a statement of reasons is dated February 18, 2008, clearly after
appointment of the arbitrator and after the hearing.  Without
a timely request by Koontz, the arbitrator was not required to provide a
statement of reasons for the award, and, as such, did not exceed his authority.

 We overrule issue of error three.

CONCLUSION

We affirm the judgment of the
trial court.

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.