161 P.3d 1000 (2007)
Doug SCOTT, a married man; Loren R. Tabasinske and Sandra K. Tabasinske, husband and wife; Patrick H. Oishi and Janet Oishi, husband and wife; and all others similarly situated, Petitioners,
v.
CINGULAR WIRELESS, a corporation doing business in the State of Washington; John Does I-XX, Respondents.
No. 77406-4.
Supreme Court of Washington, En Banc.
Argued February 28, 2006.
Decided July 12, 2007.
*1002 Douglas S. Dunham, Crane Dunham PLLC, Stephen Joel Crane, Steven Gary Rosen, Seattle, WA, Leslie A. Bailey, Trial Lawyers for Public Justice, Oakland, CA, F. Paul Bland, Trial Lawyers for Public Justice, Washington, DC, for Petitioners.
Neal S. Berinhout, Cingular Wireless, Atlanta, GA, Evan M. Tager, David M. Gossett, Mayer, Brown, Rowe & Maw LLP, Washington, DC, David Biderman, Perkins Coie LLP, Santa Monica, CA, Sally Lorraine Morgan, David John Burman, Seattle, WA, Stephanie Vititoe Kornblum, Microsoft Corp., Redmond, WA, for Respondents.
Bryan Patrick Harnetiaux, Spokane, WA, Amicus Curiae on behalf of Washington State Trial Lawyers Association Foundation.
Shannon E. Smith, Office of the Attorney General, Seattle, WA, Amicus Curiae on behalf of Attorney General of Washington.
Kristopher Ian Tefft, Association of Washington Business, Olympia, WA, Amicus Curiae on behalf of Association of Washington Business.
Harold Malkin, Jordan Gross, Yarmuth Wilsdon Calfo PLLC, Seattle, WA, Robin S. Conrad, Amar Sarwal, National Chamber Litigation Center, Inc., Washington, DC, Aphrodite Kokolis, Schiff Hardin LLP, Chicago, IL, Amicus Curiae on behalf of Chamber of Commerce.
James Condon Grant, Shelley Marie Hall, Stokes Lawrence PS, Kelly Twiss Noonan, Seattle, WA, Amicus Curiae on behalf of The Wireless Association CTIA.
Deborah Zuckerman, AARP Foundation, Washington, DC, David A. Leen, Leen & O'Sullivan PLLC, Seattle, WA, Amicus Curiae on behalf of AARP, Amicus Curiae on behalf of National Association of Consumer Advocates.
John Donahue Wilson Jr., Wilson Smith Cochran Dickerson, Seattle, WA, Amicus Curiae on behalf of AARP, Amicus Curiae on behalf of Intel Corporation, Amicus Curiae on behalf of Amazon.com, Inc., Amicus Curiae on behalf of RealNetworks, Inc.
Edward Crane, Andrew Jarzyna, Skadden ARPS Slate Meagher & Flom LLP, Chicago, IL, Amicus Curiae on behalf of Intel Corporation.
David Thomas McDonald, Kirkpatrick & Lockhart Preston Gates Ell, Seattle, WA, Amicus Curiae on behalf of Microsoft Corporation.
CHAMBERS, J.
¶ 1 The plaintiffs below filed a class action suit against Cingular Wireless (Cingular) alleging that Cingular had overcharged consumers between $1 and $40 per month by unlawfully adding roaming and hidden charges. The trial court entered an order compelling individual arbitration based on an *1003 arbitration clause in Cingular's standard subscriber contracts. That arbitration clause contained a provision prohibiting class action litigation or arbitration. Plaintiffs contend that class action waiver is unconscionable and unenforceable.
¶ 2 We took direct review[1] and conclude that the class action waiver is unconscionable because it effectively denies large numbers of consumers the protection of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW, and because it effectively exculpates Cingular from liability for a whole class of wrongful conduct. It is, therefore, unenforceable. Since the arbitration clause itself provides that if any part is found unenforceable, the entire clause shall be void, there is no basis to compel arbitration. Accordingly, we vacate the order compelling arbitration and remand to the trial court for further proceedings consistent with this opinion.

I
¶ 3 Plaintiffs Doug Scott, Loren and Sandra Tabasinske, and Patrick and Janet Oishi (plaintiffs) purchased cellular telephones and calling plans from Cingular. The contracts they all signed were standard preprinted agreements that included a clause requiring mandatory arbitration. That arbitration clause, in turn, contained a provision prohibiting consolidation of cases, class actions, and class arbitration. Cingular also retained the right to unilaterally revise the agreement and, in July 2003, did so. Customers were informed via a monthly "bill stuffer" titled in bold print, "IMPORTANT INFORMATION CONCERNING YOUR CONTRACT." Clerk's Papers (CP) at 355. The revised arbitration clause still prohibited class actions. CP 355-56.[2] It also specified that arbitration would be conducted according to American Arbitration Association (AAA) rules; that Cingular would pay the filing, administrator, and arbitration fees unless the customer's claim was found to be frivolous; that Cingular would reimburse the customer for reasonable attorney fees and expenses incurred for the arbitration (provided that the customer recovered at least the demand amount); and that the arbitration would take place in the county of the customer's billing address. It also removed limitations on punitive damages.
¶ 4 The plaintiffs' underlying suit asserts that they were improperly billed for long distance and/or out-of-network "roaming" calls[3] and that as a result of these improper billing practices, individual customers were overcharged up to $45 a month. Plaintiffs filed a class action suit to challenge the legality of these additional charges. While the plaintiffs admit no individual consumer suffered a significant loss, they claim that in the aggregate, Cingular unilaterally overcharged the public by very large sums of money.
¶ 5 Cingular moved to compel individual arbitration. Plaintiffs resisted, arguing that the class action waiver is substantively and procedurally unconscionable and thus unenforceable. Among other things, they assert that the agreement is overly one-sided because it is inconceivable that Cingular would bring a class action suit against its customers. They also argue that the class action waiver, at least when coupled with the attorney fee provision, will prevent meritorious claims from being heard. In support, the plaintiffs submitted a declaration from attorney Sally Gustafson Garratt, who had previously served as the division chief for consumer *1004 protection in the Washington State attorney general's office. She declared that the attorney general's office did not have sufficient resources to respond to many individual cases and often "relied on [] private class action to correct the deceptive or unfair industry practice and to reimburse consumers for their losses." CP at 1571, 1567-77. The plaintiffs also submitted a declaration of Peter Maier, an attorney in private practice who specialized in consumer law. He explained that the claims against Cingular "are too small and too complex factually and legally" to be adjudicated separately. CP at 1582. Maier declared that he would be unwilling to take on such cases and opined, "it is very unlikely that any other private practice attorney would be willing to do so." CP at 1585.
¶ 6 The trial court granted Cingular's motion, concluding that although Cingular's contract is a contract of adhesion, it is not sufficiently complex, illegible, or misleading to be deemed procedurally unconscionable. The court also found no substantive unconscionability. We accepted review, and received helpful amicus curiae briefs from the American Association of Retired Persons and the National Association of Consumer Advocates; from Amazon.com, Inc., Intel Corporation, Microsoft Corporation, and RealNetworks, Inc.; from the Association of Washington Business; from the Chamber of Commerce of the United States of America; from the Attorney General of Washington; from CTIAThe Wireless Association; and from the Washington State Trial Lawyers Association Foundation.
¶ 7 In essence, plaintiffs and their supporting amici argue Cingular's class action waiver is substantively and procedurally unconscionable. They contend it both denies consumers a meaningful opportunity to prove their cases and undermines the protections of Washington's CPA.
¶ 8 Cingular and its supporting amici argue, however, that the majority of courts (at least at the time they made the argument) addressing the question have found class action waivers enforceable. E.g., Jenkins v. First Am. Cash Advance of Ga., 400 F.3d 868 (11th Cir.2005); Iberia Credit Bureau, Inc. v. Cingular Wireless L.L.C., 379 F.3d 159, 174 (5th Cir.2004); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir.2002); Dale v. Comcast Corp., 453 F.Supp.2d 1367, 1377 (D.Ga.2006) (applying Georgia law); Tillman v. Commercial Credit Loans, Inc., 177 N.C.App. 568, 629 S.E.2d 865, 875 (2006); AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 199-200 (Tex.App.2003). Plaintiffs respond that an increasing number of courts have found class action waivers in arbitration clauses substantively unconscionable. E.g., Ting v. AT & T, 319 F.3d 1126, 1150 (9th Cir.2003); Skirchak v. Dynamics Research Corp., 432 F.Supp.2d 175, 181 (D.Mass.2006); Edwards v. Blockbuster Inc., 400 F.Supp.2d 1305, 1309 (E.D.Okla.2005); Luna v. Household Fin. Corp. III, 236 F.Supp.2d 1166, 1178 (W.D.Wash.2002); Lozada v. Dale Baker Oldsmobile, Inc., 91 F.Supp.2d 1087, 1105 (W.D.Mich.2000); Leonard v. Terminix Int'l Co., L.P., 854 So.2d 529, 538 (Ala.2002); Discover Bank v. Superior Court of Los Angeles, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005); Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla.Dist.Ct.App.1999); Kinkel v. Cingular Wireless, L.L.C., 223 Ill.2d 1, 47, 857 N.E.2d 250, 306 Ill.Dec. 157 (2006); Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 314 (Mo.Ct.App.2005); Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 20-21, 912 A.2d 88 (2006); Schwartz v. Alltel Corp., 2006-Ohio-3353 ¶ 36, 2006 WL 2243649 (Ohio Ct.App.); Vasquez-Lopez v. Beneficial Or., Inc., 210 Or.App. 553, 572, 152 P.3d 940 (2007); Thibodeau v. Comcast Corp., 2006 PA Super. 346, ___, 912 A.2d 874, 886; see also Kristian v. Comcast Corp., 446 F.3d 25, 64-65 (1st Cir.2006) (struck class action waiver for preventing vindication of statutory rights); Wis. Auto Title Loans, Inc. v. Jones, 2006 WI 53, ¶ 73, 290 Wis.2d 514, 714 N.W.2d 155 (questioning whether class action waiver in arbitration clause would be enforceable). There is a clear split of authority.

II

A. STANDARD OF REVIEW
¶ 9 We review trial court decisions on motions to compel arbitration de novo. Zuver v. Airtouch Commc'n Inc., 153 Wash.2d *1005 293, 302, 103 P.3d 753 (2004) (citing Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir.2001)). The plaintiffs, as the parties opposing arbitration, bear the burden of showing the class action waiver is not enforceable. Zuver, 153 Wash.2d at 302, 103 P.3d 753 (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).
¶ 10 This case is somewhat unusual in our experience because it is not the arbitration clause itself the plaintiffs challenge. Instead, it is the class action waiver embedded within it. We begin by considering whether that waiver itself is unconscionable and unenforceable under Washington law.

B. PUBLIC POLICY
i. CLASS ACTIONS AND THE WASHINGTON CPA
¶ 11 An agreement that it has a tendency "`to be against the public good, or to be injurious to the public'" violates public policy. King v. Riveland, 125 Wash.2d 500, 511, 886 P.2d 160 (1994) (quoting Marshall v. Higginson, 62 Wash.App. 212, 216, 813 P.2d 1275 (1991)). An agreement that violates public policy may be void and unenforceable. RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981). Washington's CR 23 authorizes class actions and demonstrates a state policy favoring aggregation of small claims for purposes of efficiency, deterrence, and access to justice. See, e.g., Darling v. Champion Home Builders Co., 96 Wash.2d 701, 706, 638 P.2d 1249 (1982) ("Class actions . . . establish effective procedures for redress of injuries for those whose economic position would not allow individual lawsuits. Accordingly, they improve access to the courts") (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1754, at 543 (1972) and Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)). As we have noted before, when consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights. E.g., Darling, 96 Wash.2d at 706, 638 P.2d 1249. Class remedies not only resolve the claims of the individual class members but can also strongly deter future similar wrongful conduct, which benefits the community as a whole. Judge Mosk understood this over 30 years ago:
Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.
Vasquez v. Superior Court of San Joaquin County, 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 484 P.2d 964 (1971). Class actions exist because too many are injured to name. Weiss v. Regal Collections, 385 F.3d 337, 345 (3d Cir.2004). That said, class action waivers have been found permissible in some contexts. See generally Discover Bank, 36 Cal.4th at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100; cf. Heaphy v. State Farm Mut. Auto. Ins. Co., 117 Wash.App. 438, 447-48, 72 P.3d 220 (2003); Stein v. Geonerco, Inc., 105 Wash.App. 41, 49, 17 P.3d 1266 (2001).
¶ 12 We turn to whether this class action waiver is unconscionable because it undermines Washington's CPA to the extent that it is "injurious to the public." See King, 125 Wash.2d at 511, 886 P.2d 160. The CPA is designed to protect consumers from unfair and deceptive acts and practices in commerce. RCW 19.86.020. To achieve this purpose, the legislature requires that the CPA "be liberally construed that its beneficial purposes may be served." RCW 19.86.920.
*1006 ¶ 13 Private enforcement of the CPA was not possible until 1971, when the legislature created the private right of action to encourage it. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986). Private actions by private citizens are now an integral part of CPA enforcement. See RCW 19.86.090. Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976). Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests. Hangman Ridge, 105 Wash.2d at 790, 719 P.2d 531; Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973).
¶ 14 Courts have previously held that class actions are a critical piece of the enforcement of consumer protection law. The reason is clear. Without class actions, many meritorious claims would never be brought. Vasquez, 4 Cal.3d at 808, 94 Cal.Rptr. 796, 484 P.2d 964; see also Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150, 178, 2004-Ohio-829, 809 N.E.2d 1161 ("by expressly eliminating a consumer's right to proceed through a class action or as a private attorney general in arbitration, the arbitration clause directly hinders the consumer protection purposes of the [Ohio CPA]"). Class actions are vital where the damage to any individual consumer is nominal, and that vital piece is exactly what the plaintiffs claim the class action waiver before us seeks to eviscerate.
¶ 15 Thus, we conclude that without class actions, consumers would have far less ability to vindicate the CPA. See Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). Again, the CPA contemplates that individual consumers will act as "private attorneys general," harnessing individual interests in order to promote the public good. See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 313, 858 P.2d 1054 (1993). But by mandating that claims be pursued only on an individual basis, the class arbitration waiver undermines the legislature's intent that individual consumers act as private attorneys general by dramatically decreasing the possibility that they will be able to bring meritorious suits.
¶ 16 Without class action suits the public's ability to perform this function is drastically diminished. We agree with plaintiffs and the Washington attorney general and conclude the class action waiver clause before us is an unconscionable violation of this State's policy to "protect the public and foster fair and honest competition," RCW 19.86.920, because it drastically forestalls attempts to vindicate consumer rights. To the extent that this clause prevents CPA cases, it is substantively unconscionable.[4]
II. EXCULPATION
¶ 17 We turn now to whether this class action waiver is unconscionable for effectively exculpating its drafter from liability for a large class of wrongful conduct. Contract provisions that exculpate the author for wrongdoing, especially intentional wrongdoing, undermine the public good. Adler v. Fred Lind Manor, 153 Wash.2d 331, 357, 103 P.3d 773 (2004) (provision violates Washington law because it "could be interpreted to insulate the employer from potential liability for violative behavior"). Exculpation from any potential liability for unfair or deceptive acts or practices in commerce clearly violates public policy. RCW 19.86.920; cf. Discover Bank, 36 Cal.4th at 162-63, 30 Cal.Rptr.3d 76, 113 P.3d 1100. As our sister court said, "`[a] company which wrongfully extracts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation.'" Discover Bank, 36 Cal.4th at 156, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (quoting Blue Chip Stamps v. Superior Court, 18 Cal.3d 381, 387, 134 Cal.Rptr. 393, 556 P.2d 755 (1976) (Tobriner, J., concurring)).
*1007 ¶ 18 Of course, on its face, the class action waiver does not exculpate Cingular from anything; it merely channels dispute resolution into individual arbitration proceedings or small claims court. But in effect, this exculpates Cingular from legal liability for any wrong where the cost of pursuit outweighs the potential amount of recovery. As the ever inimitable Judge Posner has aptly noted, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." Carnegie, 376 F.3d at 661.
¶ 19 In such cases, the ability to proceed as a class transforms a merely theoretically possible remedy into a real one. Gilman v. Wheat, First Securities, Inc., 345 Md. 361, 381, 692 A.2d 454 (1997) (class actions have a "penumbral remedial aspect" in that they "may make relief that otherwise might only be potentially available to a plaintiff actually available"). It is often the only meaningful type of redress available for small but widespread injuries. See, e.g., Discover Bank, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Gilman, 345 Md. at 378, 692 A.2d 454. Without it, many consumers may not even realize that they have a claim. Accord Abels v. JBC Legal Group, P.C., 227 F.R.D. 541, 547 (N.D.Cal.2005) (quoting Sledge v. Sands, 182 F.R.D. 255, 259 (N.D.Ill.1998)). The class action provides a mechanism to alert them to this fact. Second, again, claims as small as those in this case are impracticable to pursue on an individual basis even in small claims court, and particularly in arbitration. Shifting the cost of arbitration to Cingular does not seem likely to make it worth the time, energy, and stress to pursue such individually small claims. The plaintiffs also presented evidence that the prohibitive cost actually does prevent claims. In addition to the declarations discussed above, it appears that no claims from Washington customers have been brought to arbitration against Cingular in the past six years.
¶ 20 Cingular contends that it has cured any concerns about access to a remedy by promising to pay all AAA filing, administrative, and arbitrator fees unless the arbitrator finds the claim frivolous, and by promising to pay the attorneys fees under certain circumstances. While laudable, it appears to us that these provisions do not ensure that a remedy is practically available. First, the attorney fees are awarded only if the plaintiffs recover at least the full amount of their demand.[5] A plaintiff could recover 99 percent of a claim and still not be awarded any attorney fees. Cingular's lawyers are undoubtedly paid regardless of result. But, if the consumer loses or achieves an award of one dollar less than sought, there is no award of fees. Even if all of the contingencies are met and attorney fees are awarded, the arbitrator may consider the amount in controversy in awarding fees. While technically the plaintiffs are not prevented from hiring an attorney, practically, attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money. This is, of course, precisely why class actions were created in the first place. As Judge Seinfeld of the Court of Appeals rightly noted:
Washington courts favor a liberal interpretation of CR 23 as the rules avoids multiplicity of litigation, "saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation." "[A] primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significance size and importance if taken as a group." As a federal court has stated, "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action."
Smith v. Behr Process Corp., 113 Wash.App. 306, 318-19, 54 P.3d 665 (2002) (alteration in original) (quoting Brown v. Brown, 6 Wash. App. 249, 256-57, 253, 492 P.2d 581 (1971) and Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir.1968)). We agree and conclude that since this clause bars any class action, in *1008 arbitration or without, it functions to exculpate the drafter from liability for a broad range of undefined wrongful conduct, including potentially intentional wrongful conduct, and that such exculpation clauses are substantively unconscionable. Cf. Luna, 236 F.Supp.2d at 1177-79 (finding under Washington law that class action waiver in an arbitration rider was substantively unconscionable).
¶ 21 Like the arbitration clause found unconscionable in Zuver, this class action waiver effectively prevents one party to the contract, the consumer, from pursuing valid claims, effectively exculpating the drafter from potential liability for small claims, no matter how widespread. See Zuver, 153 Wash.2d at 317-18, 103 P.3d 753; accord Muhammad, 189 N.J. at 20-21, 912 A.2d 88 (striking class action waiver that functioned as an exculpation clause). A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy. Zuver, 153 Wash.2d at 318, 103 P.3d 753; see also Adler, 153 Wash.2d at 357-58, 103 P.3d 773; cf. Riensche v. Cingular Wireless L.L.C., No. CO6-1325Z, 2006 WL 3827477, *13, 2007 U.S. Dist. LEXIS 93747, at *40-41 (W.D.Wash. Dec. 27, 2006) (finding Cingular's class action ban substantively unconscionable under Washington law).

C. FEDERAL PREEMPTION
¶ 22 Next, Cingular argues that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, governs the contracts at issue and requires that we enforce the class action waiver. Section 2 of the FAA states that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Our State also favors arbitration of disputes. Zuver, 153 Wash.2d at 301 n. 2, 103 P.3d 753 (citing cases).
¶ 23 But Congress simply requires us to put arbitration clauses on the same footing as other contracts, not make them the special favorites of the law. See 9 U.S.C. § 2. As we held above, contracts that effectively exculpate their drafter from liability under the CPA for broad categories of liability are not enforceable in Washington, even if they are embedded in an arbitration clause. The arbitration clause is irrelevant to the unconscionability.
¶ 24 Class action waivers have very little to do with arbitration. Clauses that eliminate causes of action, eliminate categories of damages, or otherwise strip away a party's right to vindicate a wrong do not change their character merely because they are found within a clause labeled "Arbitration." At least based on the briefing before us, we see no reason why the purposes of favoring individual arbitration would not equally favor class-wide arbitration. Cf. Kinkel, 223 Ill.2d at 19, 306 Ill.Dec. 157, 857 N.E.2d 250 ("Cingular cites many sources demonstrating that encouraging arbitration is, indeed, a strong federal objective, but offers no authority for the claim that individual arbitration, rather than class arbitration, is favored.").
¶ 25 The FAA favors arbitration, not exculpation. As the United States Supreme Court has noted, arbitration can be a perfectly appropriate place for individuals to vindicate legislative policy, "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). But this clause prevents the use of arbitration to vindicate a broad range of statutory CPA rights. We join those courts that have found that striking a class action waiver in an arbitration clause does not violate the FAA. E.g., Discover Bank, 36 Cal.4th at 165-66, 30 Cal. Rptr.3d 76, 113 P.3d 1100; Kinkel, 223 Ill.2d at 19, 306 Ill.Dec. 157, 857 N.E.2d 250.
*1009 ¶ 26 By its terms, the class action waiver is not severable from the arbitration clause. CP at 356. Cf. Zuver, 153 Wash.2d at 320, 103 P.3d 753 (citing DANIEL P. O'MEARA, ARBITRATION OF EMPLOYMENT DISPUTES § 4.22 (2002) (unconscionable terms may be struck to preserve essential ones)). Because no party argues for severability, we enforce the language of the agreement between the parties and conclude that the entirety of the arbitration clause is null and void.[6]

III
¶ 27 We conclude that the class action waiver before us effectively denies plaintiffs a forum to vindicate the consumer protections guaranteed by Washington law and effectively exculpates its drafter from liability for a broad range of wrongful conduct. Where many customers of the same company have the same or similar complaint and each is damaged a small amount, class action litigation or arbitration is the only practical remedy available. Under such circumstances, the class action waiver is substantively unconscionable. The FAA does not preempt Washington law in this case. Since Cingular's class action waiver states that if it "is found to be unenforceable, then the entirety of this arbitration clause shall be null and void," there remains no basis to compel arbitration. We do not reach plaintiffs' remaining claims. We reverse and remand to the trial court for further proceedings consistent with this opinion.[7]
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, and RICHARD B. SANDERS, Justices.
MADSEN, J. (dissenting).
¶ 28 The public policy that the majority says is violated by the class action waiver at issue is a public policy created by the majority itself. If there is to be state policy forbidding class action waivers in consumer agreements, it should come from our legislature, not this court.
¶ 29 Perhaps more troubling, though, is that the majority's new policy disfavors arbitration, contradicting the strong legislative public policy favoring arbitration of disputes embodied in the Federal Arbitration Act (FAA), Title 9 U.S.C. Under the act, every presumption must be resolved in favor of an arbitration agreement. This policy of presuming validity of an arbitration agreement is of particular force where, as here, the arbitration agreement includes significant financial protection for consumers, belying the majority's claim that, because small claims are at issue, recovery is effectively unattainable and the class action waiver acts as an exculpatory clause. If this arbitration clause violates "public policy," then I cannot imagine any in the consumer context that would not.
¶ 30 Finally, without justification, the majority departs from the usual case-by-case analysis for determining contract unconscionability in favor of a sweeping rule that will invalidate thousands of arbitration contracts without regard to the specific terms of those agreements.
¶ 31 Because the majority takes on the legislative prerogative of making public policy and contravenes federal law requiring that arbitration agreements be accorded the same consideration as other contracts, I dissent.

ANALYSIS
¶ 32 The majority concludes that the class action waiver is unconscionable because it *1010 violates public policy by forestalling attempts to bring class suits vindicating consumer rights. The Consumer Protection Act (CPA), chapter 19.86 RCW, unquestionably embodies the legislature's statement of strong public policy favoring private actions to enforce the act in addition to actions brought by the attorney general. "[C]lass suits are an important tool for carrying out the dual enforcement scheme of the CPA." Dix v. ICT Group, Inc., No. 77101-4, slip op. at 13, 2007 WL 2003407 (Wash. July 12, 2007). "Individual claims may be so small that it otherwise would be impracticable to bring them; a class action may be the only means" of vindicating the public interest in prohibiting "`restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition.'" Id. at 11, 13, 2007 WL 2003407 (quoting RCW 19.86.920).
¶ 33 However, nothing in the CPA states the legislature's intent, or even hints, that class suits are so essential to enforcement of the CPA that a class action waiver can never appear in a consumer contract governing transactions involving small amounts of money. Absent any such statement of policy by our state legislature, which is, after all, the branch of government establishing the public policy embodied in the CPA, I cannot agree to the majority's sweeping statement of its own policy that class suits can never be waived in such a contract.
¶ 34 The majority rests on the faulty premise that the purposes of the CPA require invalidation of all class action waivers. In an analogous case, Johnson v. W. Suburban Bank, 225 F.3d 366 (3d Cir.2000), the plaintiff argued that under Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), his arbitration agreement, which precluded class actions, should not be enforced. He contended that arbitration irreconcilably conflicted with the purposes of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f (which contemplates class actions) and the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693-1693r, because under these acts public policy is served through plaintiffs acting as private attorneys general in class litigation. The court held that the TILA does not create a nonwaivable right to bring a class action and that no irreconcilable conflict exists because individual rights and the public policy goals of the TILA can be vindicated through arbitration on an individual basis.
¶ 35 Similarly, consumer rights can be vindicated through individual actions where small claims are involved. As Cingular points out, its revised arbitration provision specifies that Cingular will pay all American Arbitration Association filing, administrative, and arbitrator fees, unless the arbitrator finds the claim frivolous. Thus, under this arbitration clause, the costs of arbitration do not present an insurmountable barrier to seeking recovery, even in the event of small value claims. Moreover, the arbitration agreement does not foreclose actions in small claims courts, and the plaintiffs can vindicate their consumer rights through actions in small claims court, at nominal costs.
¶ 36 Unlike the consumer protection laws of some other states, such as California's consumer protection law, our CPA does not address waiver of class actions. As the court explained in Discover Bank v. Superior Court, 36 Cal.4th 148, 113 P.3d 1100, 30 Cal.Rptr.3d 76 (2005), the California legislature has specifically provided for consumer class actions under the California Consumers Legal Remedies Act, Cal. Civ.Code §§ 1750-1784. See Cal. Civ.Code §§ 1752, 1781. In fact, class actions in consumer actions are so favored that the California state legislature also enacted an antiwaiver provision stating "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal. Civ.Code § 1751 (West). While there was a choice of law question that remained to be resolved in the case, there is no question the court was highly sensitive to the legislature's policy choice.[1]
*1011 ¶ 37 There is no comparable provision in the Washington CPA, nor is there any provision prohibiting waiver of class actions. Of course our state legislature could, as the California legislature has, enact specific legislation addressing class suits in consumer actions. But in the absence of such legislation, it is inappropriate for this court to enforce such public policy in the face of an arbitration clause to the contraryan arbitration clause that provides for expenses to be paid by Cingular Wireless.
¶ 38 The majority also reasons that the class action waiver acts as an exculpatory clause. In rejecting a claim that the bar on class proceedings in an arbitration agreement had the effect of immunizing the company from low-value claims, the Fifth Circuit pointed out that it "must take into account that both federal and [the relevant state] policy favor arbitration as a method of dispute resolution" and concluded that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer `simplicity, informality, and expedition.'" Iberia Credit Bureau, Inc. v. Cingular Wireless L.L.C., 379 F.3d 159, 174 (5th Cir.2004) (quoting Gilmer, 500 U.S. at 31, 111 S.Ct. 1647).
¶ 39 Numerous courts have rejected the argument that the small claims at issue effectively made recovery unattainable, as a practical matter, where the arbitration agreement included financial protection for the consumers. For example, in Hutcherson v. Sears Roebuck & Co., 342 Ill.App.3d 109, 121-24, 793 N.E.2d 886, 276 Ill.Dec. 127 (2003), the court noted the primary motive underlying the FAA was to enforce private arbitration agreements and, while recognizing "the importance of class actions as a tool for protecting consumers," upheld the class-action waiver because the burden of costs fell primarily on the defendant bank. See also, e.g., Billups v. Bankfirst, 294 F.Supp.2d 1265, 1276-77 n. 6 (M.D.Ala.2003) (the defendant agreed to pay the plaintiff's administrative fees associated with arbitration); Tsadilas v. Providian Nat'l Bank, 13 A.D.3d 190, 191, 786 N.Y.S.2d 478 (2004) (because the plaintiff "failed to make use of her contractual right to ask defendant to pay her arbitration fees, her claim that the arbitration provision is unenforceable and unconscionable due to the potentially high arbitration fees is premature").
¶ 40 In many of the cases the majority cites for the proposition that class action waivers in arbitration agreements are unconscionable, the contracts at issue did not provide that the defendant would pay costs of arbitration. Because they essentially precluded any recovery by consumers due to small claims making individual actions impracticable, and effectively served to insulate the other party from any liability for its misconduct, the courts found these class action waivers substantively unconscionable. See, e.g., Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 313-14 (Mo.App.2005); Leonard v. Terminix Int'l Co., 854 So.2d 529 (Ala.2002); Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla.Dist.Ct.App.1999); State ex rel. Dunlap v. Berger, 211 W.Va. 549, 554-55, 567 S.E.2d 265 (2002).
¶ 41 But as stated, in these cases there were no provisions for costs to be borne by the defendants comparable to Cingular's contractual obligations. In Whitney, for example, the arbitration agreement provided that the defendant would reimburse the customer for filing or hearing fees, but only to the extent they exceeded what court costs would have been. Whitney, 173 S.W.3d at 304. It also provided that the defendant would not be liable for any attorney fees. Id. at 304 n. 3. In Dunlap, 211 W.Va. at 554-55, 567 *1012 S.E.2d 265, the agreement provided for arbitration fees to be equally divided. In Luna v. Household Finance Corp. III, 236 F.Supp.2d 1166, 1171-72 (W.D.Wash.2002), a complicated cost sharing schedule was set up. The court said that the arbitration rider's fee splitting arrangements weighed "heavily in favor of a finding of unconscionability" because they were "likely" to "drastically . . . exceed the costs of pursuing the claims in court." Id. at 1182. In Leonard, the arbitration agreement provided that the plaintiffs would have to pay a $500 filing fee, a minimum $150 administrative fee, a $150-$250 administrative fee per day for each hearing day, one-half of the arbitrator fee, which averaged $700 per day, and one-half of the cost of the hearing room. Leonard, 854 So.2d at 535. See also Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1177-78 (9th Cir.2003) (arbitration provision required that employee pay one-half of the costs of arbitration); Ting v. AT & T, 319 F.3d 1126, 1151 (9th Cir.2003) (the arbitration agreement required the customer to split the arbitrator's fees, which could require some plaintiffs to face prohibitive costs); ACORN v. Household Int'l, Inc., 211 F.Supp.2d 1160, 1174 (N.D.Cal.2002) (the record showed that the plaintiff's cost of arbitration would be approximately 10 times that of bringing an action in state court and that plaintiffs would bear a share of the entire arbitration costs, including the cost of the arbitrator's fee). In other cases, the agreement did not address such costs or fees, or there is no indication in the opinion whether the arbitration agreement included any provisions relating to payment of costs of arbitration. E.g., Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254 (9th Cir.2005); Discover Bank, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100; Szetela v. Discover Bank, 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002); Powertel, 743 So.2d 570 (but noting the arbitration provision precluded punitive damages and other statutorily mandated relief).[2]
¶ 42 The majority's analysis ultimately is based on the premise that plaintiffs will be unable to obtain adequate legal representation because the individual claims at issue are too small and complex for plaintiffs to find lawyers willing to represent them.
¶ 43 Many courts have rejected the argument that the plaintiffs in the particular case would be unable to obtain legal representation because of its cost in comparison to potential recovery. For example, in Billups the plaintiffs submitted affidavits from several attorneys who stated that the amount and cost of attorney time would far exceed any potential individual recovery and that the only practical method for pursuing the plaintiff's claim was through a class action. Billups, *1013 294 F.Supp.2d at 1274. The court rejected this argument, noting that the Fair Credit Billing Act, 15 U.S.C. §§ 1666-1666j, which applied to the claim, provides that if the plaintiff is successful, the creditor will be liable for costs of the action as well as reasonable attorney fees. Id. The court determined that this was adequate incentive for parties and attorneys, adding that despite the fact that the plaintiff and her lawyers might be "unwilling" to litigate because they believe there is "not . . . enough financial incentive," the court still could not conclude the class action waiver in the parties' arbitration clause was unconscionable. Id. at 1275. See also Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir.2002) (rejecting on similar grounds the argument that the arbitration clause was unconscionable because without a class procedure the plaintiff would be unable to maintain her legal representation); Johnson, 225 F.3d at 374 (stating in response to the argument the TILA's goal of encouraging private actions conflicted with an arbitration agreement precluding class actions that because attorney fees are recoverable under the TILA, "arbitration [will not] necessarily choke off the supply of lawyers"); Jenkins v. First Am. Cash Advance of Georgia L.L.C., 400 F.3d 868, 878 (11th Cir.2005) (the court rejected the argument that an arbitration agreement precluding class actions meant that consumers would be unlikely to obtain legal representation, reasoning that the agreement expressly permitted consumers to recover attorney fees and expenses if allowed by statute or applicable law and, under Georgia's Racketeer Influenced and Corrupt Organizations (RICO) statute (Ga.Code Ann. §§ 16-14-1 to -15) which applied to the plaintiff's claim, attorney fees are recoverable); Randolph v. Green Tree Fin. Corp.-Ala., 244 F.3d 814, 819 (11th Cir. 2001).
¶ 44 As in Snowden, the plaintiffs may not feel that there is "enough financial incentive" to pursue their small value claims, but, as the court did in Snowden, the majority should find the incentive is sufficient, particularly when coupled with Cingular's promise to pay attorney fees and expenses and the costs of arbitration, as well as any relief that is available in a court, including, presumably, exemplary damages and statutory penalties.
¶ 45 The majority's conclusion that the arbitration clause is substantively unconscionable is, in the end, a claim that legal representation will be essentially impossible to obtain for pursuing small value claims in arbitration proceedings and therefore by default Cingular will always "win." This same argument would apply as well to claims brought in small claims court, where legal representation is not permitted. Yet, of a certainty this court would not hold small claims court proceedings substantively unconscionable because plaintiffs cannot be represented by attorneys.
¶ 46 Because other effective avenues of recourse exist in this case, class suits are simply not necessary to vindicate the CPA under the terms of the contracts these plaintiffs signed, nor does the class action waiver act as an exculpatory clause.
¶ 47 Fundamentally, the majority ignores the fact that the class action waiver appears in an arbitration agreement. Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Every presumption must be indulged in favor of arbitration. Moses H. Cone Mem'l Hosp., 460 U.S. at 25, 103 S.Ct. 927. Like federal law, state law expresses a strong public policy favoring arbitration of disputes. Zuver v. Airtouch Commc'ns, 153 Wash.2d 293, 301 n. 2, 103 P.3d 753 (2004) (citing cases).
¶ 48 In accord with the importance of enforcing arbitration agreements according to their terms when possible, the majority should, like other courts, determine whether a class action waiver in an arbitration agreement is substantively unconscionable on a case-by-case basis, considering all the surrounding circumstances. See generally, e.g., Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir.2002); Schultz v. AT & T Wireless *1014 Servs., Inc., 376 F.Supp.2d 685, 690 (N.D.W.Va.2005); O'Quin v. Verizon Wireless, 256 F.Supp.2d 512, 520 (M.D.La.2003); AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 201 (Tex.App.2003). Instead, the majority adopts a sweeping rule that without doubt invalidates thousands, if not millions, of arbitration agreements without regard to the specific terms of those agreements.
¶ 49 This court should, instead, focus on the importance of satisfying the purpose of the FAA to ensure that private agreements to arbitrate are enforced according to their terms. Other courts have done so when faced with arguments that class action waivers should be invalidated. E.g., Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 558-59 (7th Cir.2003); Lomax v. Woodmen of World Life Ins. Soc'y, 228 F.Supp.2d 1360, 1365 (N.D.Ga.2002); Rosen v. SCIL, L.L.C., 343 Ill.App.3d 1075, 1082, 799 N.E.2d 488, 278 Ill.Dec. 770 (2003); AutoNation, 105 S.W.3d at 200; see Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).
¶ 50 The majority should not ignore the importance of arbitration and the liberal federal policy favoring arbitration agreements; it is not free to disregard federal law because a different outcome is preferred. This arbitration agreement is as "consumer friendly" as an arbitration agreement can be. The majority's refusal to enforce this agreement as written is, without any doubt whatsoever, contrary to federal policy favoring arbitration. Given the circumstances, if the contractual class action waiver is to be disregarded, it should be done only at the express direction of our state legislature.
¶ 51 The court should align itself with the many courts that have rejected arguments that class action waivers are substantively unconscionable. See, e.g., Adkins, 303 F.3d at 502-03; Snowden, 290 F.3d at 638-39; Iberia Credit Bureau, 379 F.3d at 174-75; Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298, 301 (5th Cir.2004); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2020, 164 L.Ed.2d 779 (2006); Jenkins, 400 F.3d at 877-78; Provencher v. Dell, Inc., 409 F.Supp.2d 1196, 1206 (C.D.Cal.2006); Schultz, 376 F.Supp.2d at 689-91; Gipson v. Cross Country Bank, 294 F.Supp.2d 1251, 1260-64 (M.D.Ala.2003); Billups, 294 F.Supp.2d at 1273-77; O'Quin, 256 F.Supp.2d at 519-20; Lomax, 228 F.Supp.2d at 1365; Doctor's Assocs., Inc. v. Hollingsworth, 949 F.Supp. 77, 80-81 (D.Conn.1996); Brown v. KFC Nat'l Mgmt. Co., 82 Hawai`i 226, 246 n. 23, 921 P.2d 146 (1996); Hutcherson, 342 Ill.App.3d at 121-24, 276 Ill.Dec. 127, 793 N.E.2d 886; Rosen, 343 Ill.App.3d at 1082-84, 278 Ill.Dec. 770, 799 N.E.2d 488; Walther v. Sovereign Bank, 386 Md. 412, 436-38, 872 A.2d 735 (2005); Gras v. Assocs. First Capital Corp., 346 N.J.Super. 42, 49-55, 786 A.2d 886 (2001); Tsadilas, 13 A.D.3d at 191, 786 N.Y.S.2d 478; AutoNation, 105 S.W.3d at 199-200; see Stein v. Geonerco, Inc., 105 Wash.App. 41, 17 P.3d 1266 (2001).
¶ 52 Finally, the majority suggests that the class action waiver unilaterally limits the remedies of only one side. Majority at 1008. Mere one-sidedness without more, however, does not make a contract term unconscionable. Instead, the one-sidedness must involve an undue burden to one side or unfair advantage or benefit to the other, as the cases that the plaintiffs cite demonstrate. Recently, for example, the court determined that an employment arbitration provision limiting the time in which to bring discrimination claims could force an employee to forego the opportunity to file a complaint with the Equal Employment Opportunity Commission or Washington Human Rights Commission and have the complaint investigated and mediated, and, in addition, could bar an employee from seeking damages for a hostile work environment arising out of discriminatory behavior occurring outside the limitation period. Adler v. Fred Lind Manor, 153 Wash.2d 331, 357-58, ¶ 41, 103 P.3d 773 (2004). Because of these possible effects of the contractual limitations period, the court concluded that it "unreasonably favors" the employer and was substantively unconscionable. Id. (emphasis added).
¶ 53 In Luna, cited by the plaintiffs on this issue, an arbitration rider barred class actions in arbitration proceedings between borrowers *1015 and a finance company from which they had obtained home loans. The borrowers brought a class action in federal district court, claiming, among other things, violations of the CPA based on allegations that they were misled into entering the home loan agreements at an interest rate higher than promised. The defendant moved to stay the proceedings pending arbitration, and the borrowers countered by arguing that the arbitration agreement was unenforceable on the grounds of substantive and procedural unconscionability.
¶ 54 The court said that while the provision was nominally mutual, it was effectively one-sided because there was no reasonable possibility that the finance company would institute a class suit against its borrowers. Luna, 236 F.Supp.2d at 1179. But the court did not rest its conclusion that the arbitration agreement was substantively unconscionable on this basis alone. Instead, the court said that the "prohibition of class actions would prevent borrowers from effectively vindicating their rights for certain categories of claims," noting that this would be "a particular concern when, as alleged here, the plaintiffs are financially strapped." Id. at 1178, 1179. Thus, the court tied the absence of a class procedure to the inability to vindicate rights and to the burden that the costs of arbitration would place on "financially strapped" plaintiffs. Moreover, the court in Luna also determined that substantive unconscionability resulted from the totality of several aspects of the arbitration rider that unreasonably favored defendant Household or unduly burdened the plaintiffs, i.e., the class action waiver, nonmutuality of the use of court proceedings for ancillary or preliminary remedieswhich in effect benefited only the defendant Household, a confidentiality requirement which benefited only Household as a repeat arbitration participant, and one-sided fee-sharing provisions which unduly burdened the plaintiffs. Id. at 1180-82. The court said that all of these aspects of the agreement, "taken together, grossly favored] Household." Id. at 1182-83.
¶ 55 Thus, mere one-sidedness of the class action waiver in the sense that the defendant was unlikely to seek to bring a class suit against its customers did not, in and of itself, render the arbitration agreement substantively unconscionable. Instead, it was the effect of the waiver along with the effect of other provisions that unreasonably favored the defendant Household or unduly burdened the plaintiffs that led the court in Luna to hold the arbitration agreement unenforceable on the grounds of substantive unconscionability.
¶ 56 The majority ignores the qualification provided by our case law that the one-sidedness must involve a demonstrable undue burden to one side or unfair advantage or benefit to the other and fails to explain how any asserted one-sidedness in fact constitutes an undue burden or unfair advantage under this agreement.

CONCLUSION
¶ 57 In essence, the majority creates a public policy that forbids a class action waiver in consumer actions because it believes that the assistance of an attorney is required to remedy consumer wrongs. It reasons that attorneys will not represent litigants if the amount at stake is too small. Therefore, it declares that class suits are necessary so that attorneys will be attracted by the prospect of sufficient remuneration to justify their representation.
¶ 58 I would reject the argument that plaintiffs will be unable to obtain legal representation and therefore the arbitration agreement's class action waiver is unconscionable. Instead, because Cingular has promised to pay the costs of arbitration plus attorneys' fees and costs if the plaintiffs are successful in obtaining the relief they seek, plaintiffs are able to pursue their small value claims and the class action waiver does not effectively act as an exculpatory clause relieving Cingular of liability. The plaintiffs' important goal of vindicating the public interest under the CPA can be accomplished on an individual basis. I would hold that the plaintiffs have failed to show that the class action waiver is substantively unconscionable because it is one-sided in effect, as they have not shown an undue burden to one side or unfair advantage or benefit to the other. I *1016 would affirm the superior court's order compelling arbitration.
WE CONCUR: JAMES M. JOHNSON and BOBBE J. BRIDGE, Justices.
NOTES
[1] Scott v. Cingular Wireless, 156 Wash.2d 1001, 135 P.3d 478 (2005).
[2] The modified arbitration clause provides in part:

You agree that, by entering into this Agreement, you and Cingular are waiving the right to a trial by jury. . . . You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings [on] more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that . . . if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void.
CP at 356. We do not consider whether the bill stuffer was an effective method to modify the contract.
[3] "Roaming" occurs when a subscriber of one wireless service provider uses another provider's facilities.
[4] Because we find the class action waiver substantively unconscionable, we find it unnecessary to address plaintiffs' claims of procedural unconscionability.
[5] The provision reads: "[I]f the arbitrator grants relief to you that is equal to or greater than the value of your Demand, Cingular shall reimburse you for your reasonable attorneys' fees and expenses incurred for the arbitration." CP at 356.
[6] Nothing in this opinion should be taken to prevent the parties from agreeing to submit their dispute to class wide arbitration.
[7] We respectfully disagree with our learned colleague in dissent that this opinion presumes the CPA invalidates all class action waivers. We mean to say only that class action waivers that prevent vindication of rights secured by the CPA are invalid. We agree with our dissenting colleague that whether any particular class action waiver is unenforceable will turn on the facts of the particular case. We can certainly conceive of situations where a class action waiver would not prevent a consumer from vindicating his or her substantive rights under the CPA and would thus be enforceable. E.g., Hangman Ridge, 105 Wash.2d at 784-85, 719 P.2d 531.
[1] The California court noted in Discover Bank that the plaintiff had not relied on the California Consumers Legal Remedies Act; rather, the plaintiff brought the action under the Delaware Consumer Fraud Act, Del.Code Ann. title 6, §§ 2511-2527, and Delaware contract law. Discover Bank 36 Cal.4th at 174, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The court observed that the plaintiff did "seek[] to enforce those Delaware laws in a California court with a California unconscionability rule against class action waivers that arguably is not found under Delaware law." Id. The California Supreme Court directed that on remand there must be a determination of whether the plaintiff could successfully rely on California law, among other issues. On remand, the Court of Appeals held that (1) Delaware law applied to determine the enforceability of the class action waiver; (2) unconscionability was not a procedural issue that would be governed by California law; and (3) under Delaware law class action waivers are enforceable and not unconscionable. Discover Bank v. Superior Court, 134 Cal.App.4th 886, 36 Cal.Rptr.3d 456 (2005), petition for review and depublication request denied, (Mar. 29, 2006). The court directed reinstatement of the trial court's original order compelling arbitration. Id.
[2] In Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir.2006), the First Circuit held that a class action waiver in an arbitration agreement was not enforceable because it meant that individual plaintiffs would be unable to vindicate statutory rights, contravening the holdings in United States Supreme Court decisions. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function"); Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (existence of large arbitration costs could preclude a litigant from effectively vindicating federal statutory rights in the arbitral forum; the party seeking to invalidate an arbitration agreement on the grounds that it would be prohibitively expensive bears the burden of showing the likelihood that such costs will be incurred). The antitrust claims raised in Kristian were far more complex than claims involving specific transactions, such as the deferred deposit transaction (an agreement that for a fee a check will not be cashed until a specified time) in Snowden. The plaintiffs in Kristian submitted unopposed expert declarations estimating each putative class member's recovery, assuming treble damages, at from a few hundred to a few thousand dollars, while expert fees were estimated to be in the hundreds of thousands of dollars and attorney fees could reach into the millions of dollars. In these circumstances, the class action bar precluded the plaintiffs from vindicating their statutory rights, and thus, the court held, the "[p]laintiffs cannot be compelled to arbitrate their antitrust claims, both state and federal, if that bar remains in place." Kristian, 446 F.3d at 59. The court did not address unconscionability claims. In another case, relied on by the plaintiffs, the court held that there was no arbitration agreement between the parties and thus the arbitration provision was not enforceable. In re Knepp, 229 B.R. 821, 836-37 (Bankr.N.D.Ala. 1999). The court's subsequent discussion of whether the arbitration agreement was unconscionable is therefore clearly dicta.